UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVE VILLA,                                                **REPORT AND RECOMMENDATION**

                Plaintiff,

                                                19-CV-01701(JLS)(JJM)

v.

SOUTHWEST CREDIT SYSTEMS, L.P.,

                Defendant.
_____

        Plaintiff, Steve Villa, commenced this action alleging that defendant Southwest Credit Systems, L.P. violated the Fair Debt Collection Practices Act ("FDCPA", 15 U.S.C. §§ 1692 *et seq*.) by continuing to contact him in an attempt to collect an alleged debt despite receiving his dispute letter. Complaint [1]. [1]  Before the court is defendant's motion for summary judgment [13], which has been referred to me for initial consideration [6].[2]  Having reviewed the parties' submissions [13, 32, 34], I recommend that the motion be granted.

## BACKGROUND

        On October 1, 2019, plaintiff sent a certified letter to the defendant which identified the account number associated with the alleged debt, and stated "I dispute this debt and refuse to pay". [32-1], p. 1; Villa Affidavit [32], ¶4. Defendant responded by letter dated October 9, 2019 ("October 9 Letter") stating:

        "On October 9, 2019, you disputed the referenced debt.  You may obtain

---

[1]     Bracketed references are to CM/ECF docket entries. Page references are to CM/ECF pagination (upper right corner of the page).

[2]     The case was initially assigned to District Judge Lawrence J. Vilardo, who referred all pretrial proceedings, including dispositive motions, to me for initial consideration [6].  The case was later reassigned to District Judge John L. Sinatra, Jr. [9].

substantiation of this debt by sending your written request for substantiation to [the same address as plaintiff directed the initial letter]".   [13-4], p. 2.

The Complaint [1] alleges that defendant "violated 15 U.S.C. §1692c(c) by continuing to contact the Plaintiff in an attempt to collect the alleged subject debt despite receiving Plaintiff's dispute letter", and seeks both actual and statutory damages for the violation. Id., ¶17.

Shortly after the entry of the Case Management Order [11], defendant moved for summary judgment [13] on the grounds that plaintiff lacks Article III standing and fails to establish a FDCPA violation or his entitlement to actual damages.[3]

## DISCUSSION

**A.     Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

---

[3]     Initially, in response to defendant's motion, plaintiff moved for leave to file an Amended Complaint [18] with additional claims.  That motion was denied (Villa v. Southwest Credit Systems, L.P., 2020 WL 3808911 (W.D.N.Y.), adopted, 2020 WL 3802936 (W.D.N.Y. 2020)), prompting plaintiff to institute a second action (Villa v. Southwest Credit Systems, LP., 20-cv-1456(JLS)(JJM)), which has since been consolidated with this action.  20-cv-1456 [10].

B.	Does Plaintiff have Article III Standing for His Claim?

Relying on Spokeo, Inc. v. Robins, __ U.S. __, 136 S. Ct. 1540 (2016), defendant argues that while plaintiff alleges that he "became nervous, upset, anxious and suffered from emotional distress" as a result of its conduct, he "fails to include any facts which support these mere allegations and as such, fails to provide any evidence which shows that he suffered a concrete injury-in-fact" necessary to establish his Article III standing. Defendant's Brief in Support [13-1], pp. 5-6. In response, plaintiff submits an Affidavit [32], stating that "[u]pon receipt of the October 9, 2019 letter . . . I was immediately upset and annoyed as the Defendant clearly received my September 30, 2019 letter and choose to ignore it . . . . I felt like this was done intentionally to deter me from utilizing my rights". Id., ¶8.

In order for Article III standing to exist, "the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical". Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "To have standing, the plaintiff must have suffered a particularized injury, which means that the injury must affect the plaintiff in a personal and individual way." Raines v. Byrd, 521 U.S. 811, 819 (1997).

Although defendant relies heavily on Spokeo for its argument that plaintiff flacks standing, "the majority of post-Spokeo decisions which have analyzed standing within the context of the FDCPA have determined that, unlike the [Fair Credit Reporting Act] section at issue in Spokeo, which contains only procedural requirements, the FDCPA creates a substantive right, the violation of which would itself give rise to a concrete injury". Guerrero v. GC Services Limited Partnership, 2017 WL 1133358, *10 (E.D.N.Y. 2017). *See also* Escobar v. Midland

Credit Management, 2019 WL 3751486, *3 (D. Conn. 2019) ("most courts have found that the FDCPA creates a substantive, not merely procedural, right "the violation of which would itself give rise to a concrete injury"); Papetti v. Does 1-25, 691 Fed. Appx. 24, 26 (2d Cir. 2017) (Summary Order) (finding that plaintiff's allegations of violations of §§1692e and g of the FDCPA by themselves "entail the concrete injury necessary for standing").

In any event, even if defendant is correct that under Spokeo plaintiff is required to show, in addition to the FDCPA violation itself, that he suffered an injury in fact, plaintiff has met that burden at this stage by submitting an Affidavit in response to defendant's motion stating that the October 9 Letter caused him to become "immediately upset and annoyed". Villa Affidavit [32], ¶8. Although defendant characterizes plaintiff's affidavit as "self-serving" and "conclusory" (defendant's Reply [34], p. 6), I am unable to conclude that his claims of actual injury, while weak, are insufficient as a matter of law. *See* DeGeorge v. LTD Financial Services, L.P., 2008 WL 905913, *5 (W.D.N.Y. 2008) (denying defendant debt collector's motion for partial summary judgment on plaintiff debtor's claim for actual damages based on emotional distress, and supported only by the plaintiff's "self-serving statements", because "[a]lthough the evidence of Plaintiff's emotional distress is fairly weak, it nonetheless exists in the record, and Plaintiff is entitled to have a jury determine what, if any, damages he is due").

**C.      Did the October 9 Letter Violate the FDCPA?**

"To determine whether a FDCPA violation has occurred, this Circuit employs the 'least sophisticated consumer' test." Hallmark v. Cohen & Slamowitz, LLP, 293 F.R.D. 410, 414 (W.D.N.Y. 2013). "[T]he least-sophisticated-consumer standard effectively serves . . . [a] dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting,

against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993).

Here, plaintiff alleges that defendant's October 9 letter violated §1692c(c) of the FDCPA, which states that:

> "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except -
>
> . . .
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy."

Defendant does not dispute that the October 9 Letter constituted a communication "with the consumer with respect to [a] debt". [4] Instead, it argues that the letter falls within the "specific remedy" exception of §§1692c(c)(2), (3). Defendant's Brief [13-1], pp. 6-7. Alternatively, defendant argues that even if the October 9 letter does not fall within the specific remedy exception, it "cannot serve as the basis of an actionable claim pursuant to Section 1692c(c)" because: (1) 23 N.Y.C.R.R. §1.4 required it to provide plaintiff with written instructions on how to substantiate the debt and it could not comply with §1692c(c) without violating New York State law, thus placing it into a "frozen" state; and (2) plaintiff's dispute of the debt waived any claim that the October 9 letter violated §1692c(c). Id., pp. 7-10.

---

[4] The October 9 Letter identified the creditor, the account number, and the amount owed. [13-4], p. 2. Although not relied upon by plaintiff, the letter also contained the following disclaimer: "This is an attempt to collect a debt by a debt collector". Id.

### 1. The Specific Remedy Exception

This exception applies when a debt collector notifies a debtor of a specific remedy that it may invoke or that it is invoking. 15 U.S.C. §§1692c(c)(2), (3). "Such a remedy might be a demand for arbitration or the filing of a lawsuit." Garcia v. Gurstel Chargo, P.A., 2013 WL 4478919, *4 (D. Ariz. 2013). Other courts have recognized that the exception includes "the communication of all items statutorily required in order to invoke a remedy". Recker v. Central Collection Bureau, Inc., 2005 WL 2654222, *4 (S.D. Ind. 2005). For example, if a consumer notifies the debt collector that any portion of the debt is disputed, §1692g(b) of the FDCPA requires the debt collector to cease collection activities until it provides verification of the debt to the consumer. Since verification "is a statutorily required activity in order to resume collection activities", such communications are "allowed implicitly under [the specific remedy] exception [of] 1692c(c)(3)". Recker, 2005 WL 2654222, *4.

In support of its argument that the October 9 letter fell within the specific remedy exception, defendant cites Abbott v. Second Round Sub, LLC, 2017 WL 4296270 (W.D.N.Y. 2017). In Abbott the plaintiff advised the defendant debt collector that she disputed the amount of the alleged debt and expressly requested verification of the debt, but otherwise instructed the debt collector to cease all communications about the debt. 2017 WL 4296270, *1. The debt collector responded with "the requested verification of [the] debt, including three billing statements", as well as a cover letter that requested additional documents (*e.g.*, "proof of payment, theft or identity fraud") from the debtor to "help complete the investigation process". Id. In rejecting plaintiff's claim that the cover letter[5] violated §1692c(c), the court concluded that the solicitation for further information to assist in the debt collector's investigation of the

---

[5] The plaintiff did not argue that the verification documents (the billing statements) violated the statute.

dispute fell "within the [specific remedy] exception to the statute because it 'represent[ed] an effort by [the debt collector] to resolve the matter amicably'". Id. (*quoting* Garcia, 2013 WL 4478919, *5).

Plaintiff argues that defendant's reliance on Abbott is misplaced, since the October 9 letter did not attach any validation documents, but instead instructed him "to contact the Defendant at the very same address he previously sent his dispute and refusal to pay letter in order to obtain substantiation of the debt". Plaintiff's Memorandum of Law [32-6], p. 5. According to plaintiff, "[i]t is not a 'specific remedy' to ignore a request for validation and/or a cease and desist of collection efforts by instructing [him] to re-send the same letter he already sent to them and which they already received". Id.

Here, however, defendant did not ignore any request from plaintiff. Unlike the debtor in Abbott, plaintiff made *no* request for verification of the debt, and defendant was not required to provide such verification in response to plaintiff's dispute of the debt. *See* Marino v. HoganWillig, PLLC, 910 F.Supp.2d 492, 496 (W.D.N.Y. 2012) (§1692g(b) "only prohibits further action on the debt without validation, it does not require validation"). Like the cover letter in Abbott, defendant's notification to plaintiff that there was a mechanism to obtain verification of the disputed debt could potentially lead to resolution of some or all of his dispute. Therefore, it constitutes a specific remedy, because it 'represents an effort by [defendant] to help resolve the matter amicably'". Defendant's Reply [34], p. 3.

In any event, even if the October 9 letter did not fall within the specific remedy exception, I agree with defendant that plaintiff's request, which "contained both a dispute of the debt and a refusal to pay", waived any claim that its responding October 9 letter violated §1692c(c). *See* Defendant's Brief [13-1], pp. 8-10.

**2.      Waiver of Plaintiff's §1692c(c) Claim.**

"Although 15 U.S.C. §1692c(c) prohibits a debt collector from continuing communication with a debtor after the debtor provides written notification that he or she refuses to pay the debt, that protection from further communication can be waived by the debtor." Stout v. EquiCredit Corp. of America, 2017 WL 9473120, *2 (6th Cir. 2017). In support of its argument that a waiver occurred here, defendant relies upon Duarte v. Midland Funding, LLC, 2019 WL 978495, *1 (N.D. Ill. 2019), which held that "by including language both disputing the debt and refusing to pay, [the debtor] waived any claim under §1692c(c) that a subsequent response from [the debt collector] violated the directive to cease communications". 2019 WL 978495, *4. In so holding, the court explained, in relevant part, that:

> "Even a least sophisticated debtor would recognize that a dispute of a debt requires a response and so waives any directive from the debtor to the debt collector to cease communications . . . . Under this standard, [the debtor's] statement that she disputed the debt amounted to a waiver of her statement that she refused to pay the debt, at least with respect to the dispute she raised in the same letter." Id.

That logic applies equally here. Providing plaintiff with instructions on how to obtain verification of the debt, whether required by 23 N.Y.C.R.R. §1.4(a) or not,[6] was simply a logical response to his dispute of the debt, and did not exceed plaintiff's waiver.

The only argument plaintiff offers in response to defendant's reliance on Duarte is that in Abbott this court "already determined the extent of the waiver of the written cease and desist/refusal to pay directive in cases where it is combined with a dispute". Plaintiff's

---

[6]    23 N.Y.C.R.R. §1.4(a) provides that "[i]f a consumer disputes, orally or in writing, the validity of a charged-off debt . . . the debt collector must inform the consumer that the consumer may request substantiation of the debt, unless the debt collector has already provided the consumer the information required". Plaintiff disputes the applicability of this regulation, contending that defendant offered no evidence supporting that the debt was charged off. Plaintiff's Memorandum of Law [32-6], p. 8. However, it is unnecessary for me to resolve that dispute.

Memorandum of Law [32-6], p. 7.  That argument is misplaced.  Based on the debtor's letter at issue in Abbott, which requested the debt collector to cease any and all communication, except for providing verification of the debt, the court merely recognized that plaintiff's letter "'constitute[d] a waiver of the cease communication directive, but only with respect to the verification information'". 2017 WL 4296270, *2 (*quoting* Crumel v. Kross, Lieberman & Stone, Inc., 2015 WL 1565432, *5 (E.D.N.C. 2015)).  Abbott did not hold that this was the only circumstance in which waiver could be recognized. Instead, it simply addressed the waiver created by the language of the debtor's letter in that case - language which is distinct from plaintiff's letter to defendant at issue here.

## CONCLUSION

For these reasons, I recommend that defendant's motion for summary judgment [13] be granted.  Upon the resolution of any objections to this Report and Recommendation, a telephonic scheduling conference in the consolidated case of Villa v. Southwest Credit Systems, LP., 20-cv-1456(JLS)(JJM) will be scheduled.

Unless otherwise ordered by District Judge John L. Sinatra, Jr., any objections to this Report and Recommendation must be filed with the clerk of this court by February 12, 2021. Any requests for extension of this deadline must be made to District Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek, 838 F. 2d at 58; Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-

Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 29, 2021

> /s/Jeremiah J. McCarthy
> JEREMIAH J. MCCARTHY
> United States Magistrate Judge